IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

M. DIANE KOKEN, Insurance         :
Commissioner of the Commonwealth of
Pennsylvania, as Liquidator of    :
AMERICAN INTEGRITY INSURANCE
CO.,                              :
          Plaintiff
                                  :

          vs.                        CIVIL ACTION NO. 1:CV-98-0678
                                  :

COLOGNE REINSURANCE               :
(BARBADOS) LTD.,
          Defendant               :


M E M O R A N D U M


I.        Introduction

          We are considering the motion of the Defendant,

Cologne Reinsurance (Barbados), Ltd., to confirm an arbitration

award.  We are also considering the motion of the Plaintiff, M.

Diane Koken, the Pennsylvania Insurance Commissioner, in her

capacity as the Liquidator of American Integrity Insurance

Company, to vacate the arbitration award in part.  In our

previous opinion, *Koken v. Cologne Reinsurance (Barbados), Ltd.*,

34 F.Supp.2d 240 (M.D.Pa. 1999)(Caldwell, J.)(*Koken* I), we

compelled the parties to go to arbitration.  We also declined to

exercise jurisdiction over a Trust Account associated with the

case over which the Commonwealth Court had already asserted

control.  The motions filed by the parties are directed at the

arbitration award that is a result of the previous proceedings.

II.        Background[1]

        After being compelled to arbitrate by our previous

opinion, the parties returned to the Commonwealth Court for a

determination of whether the Trust Account at issue in the case

would also be subject to arbitration.  On September 8, 1999, the

Commonwealth Court compelled the parties to arbitrate the Trust

Account dispute.  (Doc. 77, Cologne's Motion to Confirm, Ex. B).

Therefore, all of the issues in the case were brought before the

arbitration panel.

        The original arbitration panel was convened on May 11,

2001.  However that panel was dissolved as the umpire, S. Roy

Woodall, accepted a position with the government that required

him to withdraw.  The second panel was convened on March 11,

2004, with Nathaniel Shapo as umpire.  The Shapo panel split the

arbitration into two phases.  The first phase would address the

substantive legal issues and the second phase, if necessary,

would address a precise damages award.  The hearing took place

on June 17-18, 2004.

        The Shapo panel issued an order addressing the first

phase of the proceedings on July 22, 2005.  In that unanimous

order the panel found that:

─────────────────────

        [1] As noted above, we have previously rendered an opinion in
this case and the parties are familiar with the detailed factual
background set forth in that opinion. *Koken I*, at 243-4.  As a
result, we will confine our current discussion of the factual
background to the pertinent events that transpired after we
compelled arbitration, the majority of which is undisputed.

2

1. Under 40 P.S. 221.32, the Liquidator's
claim against Cologne under the Coinsurance
Agreement is subject to offset under the
Stop Loss Agreement.  The exceptions to
setoff in the statute do not apply to the
facts of this case.

2. The Stop Loss Agreement did not terminate
as of July 25, 1993 pursuant to 40 P.S.
221.21.

3. Neither party is entitled to attorney's
fees.

4. Within 30 days of the date of this Order,
the Parties shall meet in person or by other
means and discuss a process for determining
the results of the setoff required pursuant
to this Order and shall report back to the
Panel within 60 days of the date of this
Order.  If they agree on a process, they
should jointly present their proposal to the
Panel.  If they do not agree on a process,
they shall separately present the Panel with
their proposals for going forward.

(Doc. 77, Cologne's Motion to Confirm, Ex. C).

It appears that the parties either agreed on the
results of the setoff or that the submissions presented to the
panel did not require a second hearing as there is no indication
that one occurred prior to the panel's issuance of its final
award on March 17, 2006.  The panel's final award provided that:

1. Under 40 P.S. 221.32, the Liquidator's
claim against Cologne under the Coinsurance
Agreement is subject to offset under the
Stop Loss Agreement.  The exceptions to
setoff in the statute do not apply to the
facts of this case.

2. The Stop Loss Agreement did not terminate
as of July 25, 1993 pursuant to 40 P.S.
221.21.

3

> 3. Neither party is entitled to attorney's fees.
>
> 4. The Liquidator shall surrender, cancel and release any and all interest in Letter of Credit No. 08600971 issued by Citibank, N.A., and shall so notify Citibank, N.A. in writing, and Letter of Credit No. 08600971 shall be returned to Cologne.
>
> 5. Cologne shall surrender, cancel and release any and all interest in Trust Account No. 2556001918, held by Wachovia Bank, N.A., and shall so notify Wachovia Bank, N.A. in writing, and the proceeds of the Trust Account shall revert in their entirety to the Liquidator.
>
> 6. All other requests for relief by Cologne and the Liquidator are denied.

(Doc. 77, Cologne's Motion to Confirm, Ex. D).

On March 21, 2006, Cologne moved to confirm the arbitration award. On April 19, 2006, the Insurance Commissioner moved to vacate the award. These motions are now ready for our consideration.

III.   <u>Motion to Confirm</u>

Cologne has filed a motion to confirm the arbitral award. Its argument for confirmation is that none of the grounds for refusal that are found in The Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") apply. Koken's response, which is addressed in detail in the following section, was to file a motion to vacate the award in part. She contends that there are grounds for refusal under the Convention. Specifically, she maintains that

4

the arbitration agreement was not enforceable and that the panel acted in manifest disregard for the applicable law.  Since the Insurance Commissioner's objections to confirmation are included in her motion to vacate, we will address the arguments made by the parties in the context of Koken's motion.  A resolution of Koken's motion will also provide us with a resolution of Cologne's motion to confirm.  Further, there are aspects of the award that the Insurance Commissioner does not contest and those aspects will be confirmed.  As for the portions of the award she does contest, for the reasons discussed in the following section, we will grant Cologne's motion to confirm in part and deny it in part.

IV.      Motion to Vacate

     A.   Enforceability

          In her motion to vacate, Koken argues that the arbitral agreement is unenforceable.  She contends that: (1) the arbitration agreement entered into by American Integrity cannot be enforced against the insurance commissioner as liquidator; (2) the Federal Arbitration Act (FAA) is reverse pre-empted by the McCarran-Ferguson Act because it does not specifically relate to insurance; and (3) that since our original ruling on the enforceability of the arbitration agreement, Pennsylvania case law has changed.  Cologne maintains that the since we have already ruled on arbitrability in this case, the "law of the

case" doctrine prohibits us from revisiting our decision.  Koken responds that the Convention on the Recognition and Enforcement of Arbitral Awards allows arbitrability to be evaluated not only when a party seeks to have a court enforce an arbitration agreement, but also when a party seeks judicial assistance to enforce an award.  Second, she contends that this is a diversity case and that the state law governing our previous decision has changed.

To begin, we agree with the Insurance Commissioner that the "law of the case" doctrine does not prohibit us from revisiting the issue of arbitrability.  The Convention provides that "[r]ecognition and enforcement of an arbitral award may...be refused if the competent authority in the country where recognition and enforcement is sought finds...[t]he subject matter of the difference is not capable of settlement by arbitration under the law of that country...."  Convention on the Recognition and Enforcement of Foreign Arbitral Awards art. 5, *opened for signature* June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3.  Koken contentions as to arbitrability fall within this provision.[2]

---

[2] We note that Koken also directs our attention to Article II of the Convention.  Article II, however, addresses the enforcement of an arbitration agreement when one party seeks to have a court order arbitration.  Thus, the criteria set forth in Article II under which a court could decline to order arbitration is not the standard that applies at this stage of the litigation.  The correct standard, as quoted above, is found in Article V, which address the enforcement of arbitral awards.

In *Koken* I we compelled the parties to arbitrate.  At that time, the Insurance Commissioner opposed arbitration on the following bases: (1) reverse-preemption under the McCarran-Ferguson Act; (2) that arbitration would..."impair Pennsylvania's statutory scheme for regulating insurance..."; and (3) that the agreement to arbitrate in unenforceable against her as Liquidator.  *Koken* I, at 255-6.  We rejected these arguments.  First, we found that there was no reverse-preemption under the McCarran-Ferguson Act as, pursuant to the Third Circuit's decision in *Grode v. Mutual Fire, Marine and Inland Ins. Co.*, 8 F.3d 953 (3d Cir. 1993), the suit brought by the Liquidator did "...not involve the business of insurance."  *Id.* at 256.  Second, the majority of our opinion addressed, in great detail, why the state's regulation of insurance would not be impaired.[3]  Finally, we found that the agreement was enforceable against Koken as the Liquidator because the Liquidator "...stand[s] in the shoes of the insolvent insurer and is bound by the insurer's contractual agreements."  *Id.* at 256.  As such, we found the Insurance Commissioner's reliance on *Corcoran v. Ardra Insurance Company, Ltd.*, 77 N.Y.2d 2255, 567 N.E.2d 969, 566 N.Y.S.2d 575 (N.Y. 1990), was misplaced.  *Id.*

---

[3] The majority of our opinion focused on why we should not abstain from deciding the issues in *Koken I* under the Supreme Court's decision in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S. Ct. 1098, 87 L. Ed. 1424 (1943).  However, the Insurance Commissioner relied on the arguments she made in support of *Burford* abstention to support her contention Pennsylvania's insurance scheme would be impaired if we compelled arbitration.

The Insurance Commissioner's current arguments mirror those she made in *Koken I*. Notably, she has not provided any argument or case law that contravenes our conclusion as to the applicability of reverse-preemption under the McCarran-Ferguson Act. Further, she has again relied on the New York Court of Appeals decision in *Ardra* but has not addressed our previous ruling that *Ardra* was inapplicable because the Liquidator "stand[s] in the shoes of the insolvent insurer." The Insurance Commissioner does point to some recent Pennsylvania cases, however, that she argues evidence a move away from compelling the Liquidator to arbitrate. Those cases, however, are easily distinguishable.

The first case relied on is *Koken v. Reliance Insurance Company*, 846 A.2d 778 (Pa.Commw.Ct. 2004). In that case, the Commonwealth Court held that Reliance could not compel the Liquidator to arbitrate because the Liquidator had not agreed to arbitration. *Id*. at 781. The Commonwealth Court, however, specifically found that its holding did not invalidate our conclusion in *Koken I*. *Id*. The court's decision turned on which party initiated the lawsuit. In *Reliance*, the insurance company initiated suit against the Liquidator and then sought arbitration. The Commonwealth Court found that the "critical point" was that the Liquidator had not initiated or agreed to the law suit and as a result, the Liquidator could decline to arbitrate. *Id*. The court distinguished *Reliance* from *Koken I*

on this basis.  The *Reliance* Court stated that by "...initiating the lawsuit [in *Koken* I], the [Insurance Commissioner] must be bound by agreements to arbitrate unless grounds exist for the revocation of that agreement."  *Id*.  We find it is clear that Reliance does not support Koken's assertion that, as the Liquidator, she cannot be compelled to arbitrate.

Koken next directs our attention to *Koken v. P.L.D. Denis, Esq.*, 2004 U.S. Dist. LEXIS 6506 (M.D.Pa. 2004)(Kane, J.).  In *P.L.D. Denis*, Koken had filed suit against the Defendants in Commonwealth Court to recover payments that the Defendants had received from Reliance Insurance Company, which she viewed as a voidable preference.  *Id*. at *2.  The Defendants removed the case to federal court and the Insurance Commissioner filed a motion to remand.  *Id*.  The court ultimately remanded, finding that an exercise of jurisdiction would "...disturb and interfere with the Commonwealth Court's control and in rem jurisdiction over the underlying liquidation proceedings."  *Id*. at *10.  The court further stated that "[r]emanding the voidable preference action also enhances judicial efficiency in allowing the Commonwealth Court to dispose of a matter in direct relation to the ongoing liquidation process overseen by that court, and allows the Commonwealth Court to proceed with a unified administration of Reliance's estate."  *Id*.

*P.L.D. Denis* did not, as noted by Judge Kane, involve arbitration.  *See Id.* at *9-10.  Nonetheless, Koken contends

that we should be guided by the court's decision because both cases involve questions of state law.  The Insurance Commissioner glosses over the fact, however, that while there are state law issues in the instant case, the arbitration agreement is governed by the Convention, which is an issue of federal law.[4]  *P.L.D. Denis* does not consider whether the Liquidator can be compelled to arbitrate and, as a result, it does not change our original determination.

The final Pennsylvania case referred to is *Koken v. Legion Insurance Company*, 865 A.2d 945 (Pa.Commw.Ct. 2004).  She argues that in *Legion*, the Commonwealth Court found that Pennsylvania law and the liquidation order would be violated if a tribunal other than the liquidation court exercised jurisdiction.  The Liquidator had agreed to allow an Illinois court to decide an action for declaratory relief brought by Eagle Star, the lead underwriter for reinsurers of a property program affiliated with Legion, "...to determine the validity of contractual setoff rights [Eagle Star] claimed."  *Id.* at 947-8. The Commonwealth Court found this consent to be invalid stating: "[allowing the Illinois court to determine Legion's obligation] does not serve the interests of Legions's policyholders and

---

[4] We are aware that in making our determination to compel arbitration in *Koken I*, we relied on both federal and state case law.  However, our reference to state case law, to determine whether the insurance scheme in Pennsylvania contemplates compelling the Liquidator to arbitrate, does not negate the fact that arbitration under the Convention is a federal-law issue.

creditors, and it is contrary to Article V.  Only this Court has

authority to determine the amount of Legion's obligations to

Eagle Star."  *Id*. at 959.  *Legion* is distinguishable, however,

because it does not deal with arbitration.  In *Legion*, the

Commonwealth Court was dealing with the question of whether a

court in another jurisdiction could render a decision on

Pennsylvania liquidation proceedings.  There is no indication

that the Commonwealth Court was overruling its previous decision

in *Reliance*, which, as discussed, clearly supports our

conclusion that the Insurance Commissioner can be compelled to

arbitrate.  Having considered the arguments presented by the

Insurance Commissioner, we conclude that in this case, the

arbitration agreement was enforceable against the Liquidator.[5]

B.  <u>Manifest Disregard</u>

The Insurance Commissioner also seeks to vacate the

award on the grounds of manifest disregard of the applicable

law.  Koken argues that the arbitration panel's award cannot be

reconciled with the governing Pennsylvania statutes.  She

contends that the panel erred when it decided, (1) that the Stop

_____

[5] Koken has cited a number of Ohio cases in support of her
contention that the arbitration agreement is unenforceable.
Specifically, she relies upon the Ohio Court of Appeals decision
in *Benjamin v. Pipoly*, 155 Ohio App. 3d 171, 800 N.E.2d 50 (Ohio
Ct. App. 2003).  In *Pipoly*, however, the Ohio Court of Appeals
adopted a line of reasoning similar to the *Ardra* court, a line
of reasoning we have already rejected.  Further, the
Commonwealth Court's decision in *Reliance* limits the possibility
of using the Ohio courts' rulings as persuasive authority.

Loss agreement did not terminate 30 days after the liquidation order was entered, and (2) that the coinsurance agreement[6] was not "in the nature of a capital contribution" and as such, ineligible for setoff.  *See* 40 P.S. §§ 221.21 & 221.32(b)(3). In her brief, Koken maintains that the arbitration panel's ruling regarding the Stop Loss agreement is a blatant defiance of 40 P.S. § 221.21, which ends the insurance liabilities of the insolvent insurer 30 days after the liquidation order is entered.  She further argues that because a capital contribution has the effect of increasing surplus, the panel should have found that the coinsurance agreement was governed by 40 P.S. § 221.32(b)(3) and thus no setoff should be allowed.  Finally, the Insurance Commissioner also contends that a finding of manifest disregard is supported by the failure of the panel to give a reasoned award, which she maintains the parties agreed to, and the amount of time it took for the panel to render its decision.

Cologne argues that the arbitration panel's award was correct.  With regard to the statutory setoff provision, the Defendant presents the following arguments in support of its contention that the decision of the panel is not in manifest

---

[6] The Insurance Commissioner maintains that the agreement between American Integrity and Cologne was not a coinsurance agreement but rather a "surplus relief arrangement."  The sole basis of support for this contention is that Cologne admitted during the arbitration that the point of the agreement was to increase the surplus.  However, Koken has provided us with no legal argument or citations to support her contention that the coinsurance agreement was anything other than that.

disregard of the law: (1) that the rules of statutory construction preclude the reading of the statute advocated by Koken; (2) that the plain meaning of capital contribution requires that funds be given by a stockholder or partner; (3) that capital and surplus are distinct, mutually exclusive terms; and (4) that legislative history demonstrates that the statutory sections has no application to reinsurance.  Cologne also argues that the panel correctly interpreted 40 P.S. § 221.21 because the statue is directed at primary insurance, not reinsurance. Finally, the Defendant contends that there was no agreement for a reasoned arbitral award and that the time the panel took to decide the case does not evidence manifest disregard.

In her reply brief, the Insurance Commissioner contends that the provision against setoff is applicable because: (1) the insurance statute should be liberally construed; and (2) that the surplus created by the agreement between Cologne and American Integrity is "in the nature of a capital contribution" because it bolstered American Integrity's surplus, which a capital contribution also would do.  Koken maintains that 40 P.S. § 221.21 is not limited to policies of direct insurance.  She further argues that if Cologne's argument is accepted, the Stop Loss agreement should terminate when the liquidation petition was filed pursuant to 40 P.S. § 221.20(d).

In its reply brief, Cologne has not contested the Insurance Commissioner assertion of manifest disregard as an

appropriate vehicle to vacate an arbitration award governed by the Convention.  We agree with Koken that "[t]he Convention specifically contemplates that the state in which, or under the law of which, the award is made, will be free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief." *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997).

"A district court may...vacate an arbitrator's decision where the arbitrator's decision 'evidence[s] a manifest disregard for the law rather than an erroneous interpretation of the law.'" *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003)(*quoting Local 863 Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Jersey Coast Egg Producers, Inc.*, 773 F.2d 530, 534 (3d Cir.1985)).  A court can vacate an arbitration award under the manifest disregard standard if it finds that: "...(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Millar*, 274 F.Supp.2d 701, 706 (W.D.Pa. 2003)(*quoting Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202 (2d Cir.1998)).

i. <u>Setoff</u>

40 P.S. § 221.32(a) provides that "[m]utual debts or mutual credits between the insurer and another person in connection with any action or proceeding under this article shall be setoff and the balance only shall be allowed or paid, except as provided in subsection (b)."  Subsection (b)(3) says that:

> (b) No setoff or counterclaim shall be allowed in favor of any person where:
> ....(3) the obligation of the person is to pay an assessment levied against the members or subscribers of the insurer, or is to pay a balance upon a subscription to the capital stock of the insurer, or is in any other way in the nature of a capital contribution....

40 P.S. §221.32(b)(3).  In it final award, the arbitration panel found that "[u]nder 40 P.S. 221.32, the Liquidator's claim against Cologne under the Coinsurance Agreement is subject to offset under the Stop Loss Agreement.  The exceptions to setoff in the statute do not apply to the facts of this case."  (Doc. 77, Cologne's Motion to Confirm, Ex. D).  The Insurance Commissioner contends that the panel engaged in manifest disregard for the law in making this finding.

Since there appear to be no cases in Pennsylvania, at either the state or federal level, interpreting the "in any other way in the nature of a capital contribution" language of the statute, it would be difficult for us to find that the arbitration panel acted in manifest disregard for the law. Koken's entire argument is that because the agreement between

15

American Integrity and Cologne increased American Integrity's surplus, it clearly is "in any other way in the nature of a capital contribution."  However, she has not addressed the majority of the points made by Cologne in opposition to this contention.

In this regard, we begin with the issue of statutory construction.  Cologne has brought to our attention *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001).  In *Circuit City*, the Supreme Court was interpreting § 1 of the FAA, which exempts certain categories of employees from coverage under the FAA.  "The exemption clause provides [that] the Act shall not apply 'to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.'"  *Id.* at 112, 121 S. Ct. at 1307 (*quoting* 9 U.S.C. § 1).  The Court found that the doctrine of construction known as *ejusdem generis* was applicable to the statute.  *Ejusdem generis* refers to the principle "...that [w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."  *Id.* at 114-5, 121 S. Ct. at 1308-9.  The Supreme Court stated that:

> Construing the residual phrase to exclude
> all employment contracts fails to give
> independent effect to the statute's
> enumeration of the specific categories of
> workers which precedes it; there would be no
> need for Congress to use the phrases

16

> "seamen" and "railroad employees" if those
> same classes of workers were subsumed within
> the meaning of the "engaged in ⋯ commerce"
> residual clause.

*Id*. at 114, 121 S. Ct. at 1308.

The Pennsylvania statute also has specific enumerations followed by a residual phrase. The statute specifically mentions that the following obligations are not subject to setoff: "an assessment levied against the members or subscribers of the insurer, or...a balance upon a subscription to the capital stock of the insurer." 40 P.S. § 221.32(b)(3). As in *Circuit City*, there would have been no need for the Pennsylvania legislature to list these specific obligations if they were "subsumed" in the residual clause. It would not have been a manifest disregard of the law for the arbitration panel to conclude that the residual clause was referring to items similar in vein to the specific enumerations and that a coinsurance agreement, even one that increased surplus, was not at all similar to the specific enumerations. This is so particularly when those enumerations require a person to be a member or subscriber (stockholder), which certainly was not the relationship between Cologne and American Integrity.

To counter Koken's surplus argument, Cologne has also argued that the plain meaning of capital contribution requires that one be a stockholder or partner; that capital and surplus are mutually exclusive terms; and that legislative history supports a finding that the statute does not apply to

17

reinsurance.  Again, we find that the panel's reliance on any
one of these factors would not be in manifest disregard of the
law.  The only argument that Koken even addresses is the plain
meaning of the term "capital contribution."  As pointed out by
both parties, BLACK'S LAW DICTIONARY defines capital contribution
as:

> Cash, property, or services contributed by
> partners to partnership.
>
> Various means by which a shareholder makes
> additional funds available to the
> corporation (i.e., placed at the risk of the
> business) without the receipt of additional
> stock. Such contributions are added to the
> basis of the shareholder's existing stock
> investment and do not generate income to the
> corporation.

BLACK'S LAW DICTIONARY 209 (6th ed. 1990).  This definition
illustrates that a capital contribution is given by someone who
has an ownership interests in a particular company.  The
Insurance Commissioner maintains that this makes no difference
because a capital contribution creates a surplus, and since the
coinsurance agreement creates a surplus it is "in the nature of
a capital contribution."  However, given the lack of case law
from Pennsylvania interpreting the language of the statute, we
cannot conclude that a finding by the panel, that an obligation
cannot be "in the nature of a capital contribution" unless a
person has some type of ownership interest, would be manifest
disregard of the law.  And Koken has failed to provide case law
from any jurisdiction which supports her position.  Finally, we

18

cannot find that reliance by the panel on either of Cologne's remaining contentions would be in manifest disregard of the law, and Koken, by failing to address the arguments, has not argued such.

In sum, we cannot conclude that the arbitration panel was in manifest disregard of the law when it concluded that subsection (b)(3) of 40 P.S. § 221.32 did not apply in the instant case.  The Insurance Commissioner's argument is more that the arbitration panel erroneously interpreted the law.  In fact, this appears to be the only argument possible as the language of the statute does not appear to have previously been interpreted.  However, an erroneous interpretation by the arbitration panel does not warrant a finding of manifest disregard.

### ii. Continuation of Coverage

40 P.S. § 221.21 provides that:

> [a]ll insurance in effect at the time of
> issuance [of] an order of liquidation shall
> continue in force only with respect to the
> risks in effect, at that time (I) for a
> period of thirty days from the date of entry
> of the liquidation order; (ii) until the
> normal expiration of the policy coverage;
> (iii) until the insured has replaced the
> insurance coverage with equivalent insurance
> in another insurer or otherwise terminated
> the policy; or (iv) until the liquidator has
> effected a transfer of the policy obligation
> pursuant to section 523(8), whichever time
> is less.

The arbitration panel found that "[t]he Stop Loss agreement did not terminate as of July 25, 1993 [thirty days after the liquidation order was entered] pursuant to 40 P.S. 221.21." (Doc. 77, Cologne's Motion to Confirm, Ex. D).  Koken contends that the arbitration panel's decision was in defiance of the statutory language.

Cologne argues that the panel's decision was not in manifest disregard of the law because the use of the terms "'insurance" and "policy" indicate that the statute is only to be applied to direct insurance policies.  In support of this contention, Cologne directs our attention to the National Association of Insurance Commissioners (NAIC) model laws.  (Doc. 92, Cologne's Reply Brief, Auth. X).  The NAIC model law provides, in pertinent part, that:

> [n]otwithstanding any policy or contract
> language or any other statute, all policies,
> insurance contracts (other than
> reinsurance),...in effect at the time of
> issuance of an order of liquidation shall
> continue in force only for the lesser of:
> (1) a period of thirty (30) days from the
> date of entry of the liquidation order....

(*Id.*).  The drafting note indicates that the purpose of the section is to allow for policies to be cancelled "...in the event there is no guaranty fund coverage."  (*Id.*).

We must agree, however, with the Insurance Commissioner that the panel's decision as to the continuation of coverage is in manifest disregard of the law.  Contrary to the setoff statute, which is open to interpretation, 40 P.S. §

20

221.21 is quite clear.  The legislature chose to adopt language different then that in the NAIC model law.  If the legislature had wanted to exclude reinsurance from the statute, it could have.  We are unsure how the arbitration panel could conclude otherwise, given the obvious difference between the Pennsylvania statute and the NAIC model law.[7]  Thus, we will grant Koken's motion to vacate the arbitration award but only to the extent that the panel found that coverage continued under the Stop Loss agreement after July 25, 1993.

iii. <u>Reasoned Award and Time</u>

The Insurance Commissioner argues that the failure of the panel to give a reasoned award, along with the amount of time it took the panel to make it decision, evidence manifest disregard for the law.  We have already found that the panel acted with manifest disregard as to 40 P.S. § 221.21.  With regard to 40 P.S. § 221.32(b)(3) we find neither argument persuasive.  First, the transcript of the arbitration proceedings does not persuade us that the parties, or the panel, agreed to a reasoned arbitral award.  On the contrary, the

---

[7] Cologne also directs our attention to two cases it cited to the arbitration panel regarding the interpretation of the phrase "policies of insurance."  As noted by Cologne, those cases involve claim priority when an insurer is insolvent, not whether a continuation of coverage statute applies to reinsurance.  We do not find them persuasive.  We note that the defendant did not discuss these case in its reply brief but merely referred us to the brief it presented to the arbitration panel.

attorney for the Insurance Commissioner acknowledged that if the panel failed to give justification for its decision, it was his position that an agreement for a reasoned award would not be violated. (Doc. 92, Cologne's Reply Brief, Ex. G, Tr. p. 287). It is also far from clear that the parties reached an agreement to have a reasoned award.  Second, Koken has provided us with no case law to support a conclusion that a delay in rendering an arbitration decision evidences manifest disregard any more than it evidences a careful evaluation of the issues before the panel.

V.        Conclusion

        Based on the above analysis, we shall grant Koken's motion to vacate in part and deny it in part.  Further, we shall grant Cologne's motion to confirm the arbitral award in part and deny it in part, consistent with the granting, in part, of the Insurance Commissioner's motion.  Paragraph two (2) of the arbitration award shall be vacated.

        We will enter an appropriate order.


                                    /s/William W. Caldwell
                                    William W. Caldwell
                                    United States District Judge

Date: August 23, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

M. DIANE KOKEN, Insurance            :
Commissioner of the Commonwealth of
Pennsylvania, as Liquidator of       :
AMERICAN INTEGRITY INSURANCE
CO.,                                 :
          Plaintiff
                                     :
     vs.                                  CIVIL ACTION NO. 1:CV-98-0678
                                     :

COLOGNE REINSURANCE                  :
(BARBADOS) LTD.,
          Defendant                  :


O R D E R

     AND NOW, this 23rd day of August, 2006, it is Ordered
that:

          1.  The Defendant's motion to confirm the
     arbitration award (doc. 77) is granted in
     part and denied in part.

          2.  The Plaintiff's motion to vacate the
     arbitration award in part (doc. 83) is
     granted in part and denied in part.

          3.  Paragraph two (2) of the arbitration
     award dated March 17, 2006, which continues
     coverage under the Stop Loss Agreement after
     July 25, 1993, is vacated.

          4.  The remainder of the arbitration
     award dated March 17, 2006, Paragraph one
     (1) and Paragraphs three through six (3-6),
     is confirmed.


                         /s/William W. Caldwell
                         William W. Caldwell
                         United States District Judge